Clark v. Close.

## CLARK v. CLOSE.

1. **Damages**: FLOWAGE OF LAND: CHARACTER OF POSSESSION. In an action for damages for overflowing land, of which it appeared that the plaintiff had the refusal and claimed to be the owner, although his ownership thereof was denied, it was proper to submit to the jury the question of the nature of his possession.

2. **Vendor and Vendee**: LICENSE. Where the defendant obtained from the owner of land a license to overflow it by the erection of a dam, and expended money towards its erection, and afterwards the plaintiff made a contract for the purchase of the land, but paid nothing and obtained no deed: *Held*, that his right in the land was not so far superior to that of the defendant as to enable him to maintain an action for the recovery of damages caused by the overflow.

*Appeal from Johnson District Court.*

WEDNESDAY, APRIL 19.

THE petition alleges that the plaintiff, John Clark, has been the owner and in possession of certain land on the Iowa river since January 1, 1868, and that in the year 1868 the defendant erected a dam across said river which caused the water to overflow said land. Plaintiff claims damages in the sum of ten thousand dollars.

The answer denies every allegation of the petition, and avers that at the time of the erection of said dam the said

Clark v. Close.

land, alleged to be overflowed, was owned by one E. Clark, and that said E. Clark gave the defendant license to erect the dam.    Other facts are stated in the opinion.    Judgment for defendant.    Plaintiff appeals.

*S. M. Finch* and *Geo. B. Edmonds*, for appellant.

*Geo. J. Boal, Rush Clark* and *S. H. Fairall,* for appellee.

ADAMS, J.—I.    The appellant claims that the verdict was contrary to the evidence.    It is said that the undisputed evidence shows that plaintiff was the owner of lot 3, in section 33, by deed from one Dervishek, and had been such owner since 1858; that as to the other land, he was certainly in possession when the dam was erected, and was entitled to at least nominal damages.    It is doubtless true that plaintiff owned said lot 3 by title from said Dervishek, and that no license from said E. Clark could give a right to overflow the same. But as to whether the plaintiff sustained damage, the evidence is conflicting.    The defendant testifies that the plaintiff told him in 1871, which was three years after the dam was erected, that no damage had been done; that nobody was injured, and that defendant had done a great deal of good.    One Butler testified, in substance, that he did not think that lot 3 had been injured.    There was some evidence, then, to justify the jury in finding for the defendant.

II.    The court gave the following instruction:  " It is conceded that the new dam was completed in the fall of 1868.

1. DAMAGES: overflow of land: character of possession. This suit was commenced in December, 1872, and damages claimed for the injury which it is alleged that plaintiff sustained between these two periods. So far as the plaintiff's written claim to this land is concerned (except lot 3, in section 33), it dates from the 17th day of June, 1870.    There is some uncertainty in the testimony as to what the nature of his possession was, prior to that time. This is a question of fact for you to determine from all the evidence."

The appellant claims that there was no uncertainty in the evidence in regard to the nature of his possession, and that he

was prejudiced by the instruction of the court to the effect that there was. It is true he testifies that he was in possession under first a verbal, and afterwards a written contract, and that the written contract, a copy of which he sets out, was the same as the verbal. If this were all, there would seem to be no uncertainty in regard to the character of his possession. But he also testifies that his agreement with his father, E. Clark, was that he was to take the land *at any time,* at a certain price, and that he was to work the quarries. The fair construction of this language is, that appellant had obtained a refusal of the land, and in the meantime was to have the right to work the quarries and control the use of the land if it had any. We do not think, therefore, that the court erred in stating to the jury that there was uncertainty in regard to the character of the plaintiff's possession prior to the written contract of 1870. At all events, if the character of plaintiff's possession was certain, and we think in fact it was, it was certainly such as to give him no right of action on account of the overflow.

III. The court further instructed the jury in these words: "If, before the verbal contract of purchase was made, Ezekiel 2. VENDOR and Clark, by his acts and declarations, gave a license vendee: li- cense. or consent to Close to erect a dam to the height he did raise it, and in pursuance thereof, and before John Clark took a contract of purchase, Close either had the dam erected, or had made large expenditures in the erection thereof, John Clark was bound by the consent or permission given by Ezekiel Clark, and he cannot now complain."

The plaintiff contends that this instruction is erroneous, because it would require a person purchasing a farm bordering upon a stream to take notice of expenditures of all mill owners below for material to build new dams.

Where a person is engaged in erecting a dam, which will cause certain land to be overflowed, and another person, without knowledge of the dam, purchases the land and pays for it in whole or in part, we do not think that the person erecting the dam has a right to proceed and overflow the land, because

he obtained a license from the vendor before the sale, and has expended money on the strength of it.

But the plaintiff does not appear from the evidence to have paid any part of the purchase money, nor obtained a deed. He acquired no right, therefore, superior to that of defendant, if defendant, as the instruction supposes, had, prior to plaintiff's verbal contract, obtained a license from Ezekiel Clark to overflow the land and made large expenditures in the erection of the dam.

IV. The court further instructed the jury as follows: "If you find from the evidence that the previous verbal contract was materially different from that which was written June 17, 1870, as, for instance, that it was a mere lease, or that it was a contract of sale, different in terms from the written one; and you find that Ezekiel Clark made to Close the warranty deed for one-half the dam and power on December 22, 1869, and the new dam was then raised and completed, Ezekiel's warranty covered the dam as it then was, and being the owner of the land now claimed by the plaintiff, it conveyed. to the plaintiff the right, so far as the lands are concerned, to keep the dam up to the then height, and the plaintiff, in this view of the case, cannot recover for any damages which have occurred since the 22d day of December, 1869. In other words, a conveyance of the dam and water included the water in the dam, and for the whole length of it, and the land covered by it, or affected by it, as well as the water used upon the wheels and machinery."

If this instruction contains error, it is error without prejudice. If there was any difference between the verbal and written agreements, the verbal agreement was so materially different that the plaintiff could not recover under it. It was what the plaintiff says it was: that he should work the quarries, do what he pleased with the land, and take it at any time at a certain price. There is no evidence that he worked the quarries, or did anything with the land except to take possession.

AFFIRMED.